# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Antwoyn Terrell Spencer,                              No. 20-cv-1236-NEB-KMM

                Plaintiff,

v.                                                   **REPORT AND
                                                     RECOMMENDATION**

United States Bureau of Prisons, Warden
J. Fikes, Captain Warlick, Lieutenant
Weber, Lieutenant Gravdahl, Officer G.
White,

                Defendants.

This matter is before the Court on the Defendants' Motion to Dismiss Mr. Spencer's Complaint. Defs.' Mot., ECF No. 33. The Defendants argue that Mr. Spencer's claims should be dismissed because he failed to exhaust his administrative remedies or, alternatively, because the complaint fails to state a claim on which relief can be granted. Defs.' Mem., ECF No. 35. Because Mr. Spencer has not exhausted administrative remedies, the Court recommends that this case be dismissed without prejudice.

## I.    Background

Mr. Spencer's Complaint addresses events that occurred while he was incarcerated at the Federal Correctional Institution in Sandstone ("FCI-Sandstone").[1] Compl. at 1, ECF No. 1. On the morning of April 13, 2020, Officer G. White directed Mr. Spencer to remove the linen from his cell mate's bed and deliver it to the FCI-Sandstone laundry department

---

[1]    Mr. Spencer has since been transferred to the Federal Prison Camp in Duluth. ECF No. 24.

for exchange. Mr. Spencer refused, and Officer White threatened to take him to the Special Housing Unit ("SHU") if he persisted. Officer White then "approached [Mr. Spencer] in an intimidating manner using profane, obscene, and abusive language. Specifically, Officer G. White told [him] to 'Shut [his] Fucking Mount and do as [he was] Told.'" *Id.*

Mr. Spencer asserts that Officer White's behavior violates provisions of the United States Bureau of Prisons ("BOP") Employee Personal Conduct policy. Under that policy, "[e]mployees may not use threats or intimidation toward any person nor use profane, obscene, or abusive language when dealing with inmates." *Id.* at 1–2 (citing BOP Program Statement §§ 3420.08 & 3420.11). Although Officer White's conduct violated such rules, Mr. Spencer was given an incident report because of their disagreement. He was handcuffed and was sent to disciplinary segregation at the direction of Lieutenant Weber. *Id.* at 2. The incident report charged Mr. Spencer with violating two prison rules governing refusal to obey a staff member's order and insolence towards staff. According to the Complaint, reassignment to the SHU can only be a consequence of violating those rules if an inmate repeats the same act within a specified amount of time. Mr. Spencer asserts that he did not qualify for SHU placement for any violation of these rules. *Id.*

The incident report was informally resolved on April 15, 2020 as a result of "conflicting reports," but Mr. Spencer remained in disciplinary segregation based on an order given by Lieutenant Gravdahl. *Id.* Mr. Spencer did not return to the general population until April 20, 2020. *Id.* While he was in disciplinary segregation, Mr. Spencer was not allowed to make phone calls because Warden J. Fikes automatically suspended phone privileges for all inmates in the SHU. *Id.* Until he was returned to the general

population, Mr. Spencer did not have access to his property, lost recreation privileges, and was restricted to his cell except for brief showers. *Id.* Mr. Spencer seeks damages of $500,000, an injunction requiring Warden Fikes to be immediately transferred, and a 14-day suspension of all other named defendants. *Id.*

The Court has previously construed Mr. Spencer's pro se Complaint, in part, to bring claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Order (Sept. 16, 2020) at 2–4, ECF No. 18. Although Mr. Spencer cites 42 U.S.C. § 1983 as the basis for his claims in this case, that statute only applies to state actors, not the federal officials he named as Defendants.[2] *Id.* at 2–3. However, Mr. Spencer's mistake regarding the applicability of § 1983 alone does not mean that his claims necessarily fail. In some circumstances, *Bivens* will allow a person to recover damages as a result of federal officials' conduct that violates the Constitution. *Id.* at 3–4.

## II.    Discussion

In their motion to dismiss, the Defendants argue that Mr. Spencer's Complaint should not move forward because he failed to exhaust available administrative remedies prior to filing this case. Alternatively, the Defendants allege that his Complaint should be dismissed for failure to state a claim. For the reasons that follow, the Court concludes that

---

[2]    In his response to the motion to dismiss, Mr. Spencer again asserts that he brings this suit under § 1983. Pl.'s Opp'n at 1, ECF No. 42. For the reasons stated in the Court's September 16, 2020 Order, § 1983 does not provide a viable basis for Mr. Spencer's claims against *federal* officials.

Mr. Spencer did not properly exhaust his administrative remedies. Therefore, the Court does not discuss the Defendants' alternative arguments for dismissal.

### A.    Applicable Procedural Standards

The Defendants filed their motion pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim for relief. In considering a Rule 12(b)(6) motion, the court accepts as true the factual allegations in the complaint and determines whether those facts "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). Although this standard generally governs motions to dismiss, the arguments raised by the Defendants implicate other analytical frameworks as well.

### *Exhaustion is an Affirmative Defense*

With respect to the Defendants' exhaustion argument, Rule 12(b)(6)'s standard does not necessarily apply.[3] The Supreme Court has made clear that failure to exhaust administrative remedies is an affirmative defense, and as a result, exhaustion does not have to be alleged in the complaint. *Jones v. Bock*, 549 U.S. 199, 214–17 (2007). Ordinarily, courts do not resolve affirmative defenses at the motion-to-dismiss phase unless the applicability of the defense is clear from the face of the complaint. *See, e.g.*, *United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106, 1118 (D. Minn. 2010). In this case, however,

---

[3]    The Court also notes that failure to exhaust administrative remedies does not affect federal courts' subject matter jurisdiction. *Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007).

the fact that exhaustion cannot be resolved on the pleadings alone is not fatal to the Defendants' motion.

### Rule 12(d)

The Defendants have submitted materials that are neither referenced in Mr. Spencer's Complaint, nor attached to it as exhibits. Generally, in ruling on a motion to dismiss under Rule 12(b)(6), courts do not consider materials "outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "If, on a motion under Rule 12(b)(6) … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Converting a motion to dismiss is appropriate where a defendant provides written evidence in opposition to a complaint that does more than merely repeat the allegations in the pleadings. *McAuley v. Federal Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007). Because the Defendants submitted materials outside the Complaint on their motion to dismiss, the Court must consider whether it is appropriate to convert the motion to one for summary judgment under Rule 12(d).

When converting a motion to dismiss to a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material[s] … pertinent to the motion." Fed. R. Civ. P. 12(d). If a plaintiff has an adequate opportunity to respond to the evidence submitted and does not dispute the material facts, a court is not required to notify a plaintiff that it will be treating a motion to dismiss as one for summary judgment. *Van Zee v. Hanson*, 640 F.3d 1126, 1129 (8th Cir. 2011); *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003). Here, Mr. Spencer had an adequate

opportunity to respond to the Defendants' motion, and he neither contested the authenticity of any evidentiary materials that the Defendants submitted, nor suggested that he needed additional time to provide evidence to the Court that is material to the exhaustion issue. Under these circumstances, the Court concludes that it is appropriate to convert the motion to one for summary judgment.[4] *Schuett v. L. Lariva*, Case No. 15-cv-4207 (WMW/SER), 2016 WL 11198353, at *3–4 (D. Minn. Nov. 3, 2016) (concluding that conversion of a motion to dismiss arguing that the plaintiff failed to exhaust administrative remedies was appropriate where the plaintiff had an opportunity to respond to the defendants' evidentiary materials, but did not do so), *report and recommendation adopted as modified*, Case No. 15-cv-4207 (WMW/SER), 2017 WL 123427 (D. Minn. Jan. 12, 2017).

### *Summary Judgment Standard*

Having concluded that it is appropriate to convert the Defendants' motion to dismiss into a motion for summary judgment, the Court must consider the standards of Federal Rule of Civil Procedure 56. Summary judgment is proper where, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of any material fact, and the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party seeking summary judgment must show that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477

---

[4]    Mr. Spencer will be given an opportunity to object to the Court's findings and conclusions in this Report and Recommendation. If he has any evidence relevant to the issue of exhaustion, he should submit it in support of any objections he may file.

U.S. 317, 322–23 (1986). The nonmoving party must then point to specific facts in the record that create a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### B.    Exhaustion Legal Standard

Under the Prison Litigation Reform Act ("PLRA") of 1995, exhaustion of available administrative remedies is required before an inmate files a lawsuit regarding conditions in a prison. 42 U.S.C. § 1997e(a). The purpose of § 1997e(a) is "to reduce the quantity and improve the quality of prisoner suits" and give prison officials the chance "to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). The PLRA's exhaustion requirement is "mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019). It applies to both lawsuits filed under 42 U.S.C. § 1983 "or any other Federal law," including claims brought pursuant to *Bivens*. *Porter*, 534 U.S. at 524. And it applies to claims about the "general circumstances" of incarceration as well as claims about "particular episodes." *Id.* at 532.

Administrative remedies are "available" within the meaning of § 1997e(a) when "the administrative process has authority to take some action in response to a complaint," even if it is not the specific remedy that an inmate requests. *Booth v. Churner*, 532 U.S. 731, 737 (2001). This is true even where a prisoner seeks only money damages and the prison administrative process cannot provide such relief. *Id.*

The PLRA does not define the exact procedures an inmate must follow to successfully exhaust his or her claims. Rather, prisoners are required to follow the grievance procedures applicable to the facilities where they are confined. *Jones v. Bock*,

549 U.S. 199, 218 (2007). This means that a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." *Id.* (quoting *Woodford*, 548 U.S. at 88).

### C.    Analysis

Having reviewed the record, the Court concludes that the material facts are not in dispute and Mr. Spencer has failed to exhaust available administrative remedies. As a result, the Defendants are entitled to judgment as a matter of law.

The BOP has a multi-step process for inmates to exhaust their grievances based on prison conditions. Boldt Decl. ¶ 6, ECF No. 36. First, a prisoner must seek informal resolution with prison staff by submitting an Informal Resolution Form. Second, if the matter is not resolved, an inmate may file a formal Request for Administrative Remedy, which is reviewed by the warden of the facility where the inmate is incarcerated. If the matter is still unresolved, the prisoner has 20 days from the date of the warden's decision to appeal the issue to the Reginal Director by filing a Regional Office Administrative Remedy Appeal. Fourth, the inmate may appeal the Regional Office decision to the Director, National Inmate Appeals, in Washington, D.C., by filing a Central Office Administrative Remedy Appeal. *Id.* ¶ 7. Finally, an appeal from the Central Office decision can be filed with the General Counsel. Exhaustion of an issue requires an inmate to seek review at all levels of this process. *Id.* ¶ 8.

Mr. Spencer did not follow each step of the BOP's administrative remedy process. Formal complaints, including Requests for Administrative Remedies, Regional Office Appeals, and Central Office Appeals are logged in the BOP's SENTRY database. *Id.* ¶ 11.

Mr. Spencer's SENTRY file indicates that he filed five grievances alleging staff misconduct related to the incident discussed in his Complaint. *Id.* ¶¶ 13–14. All five of these were filed at the Regional Office Appeal level and were rejected for failure to follow the proper steps in the grievance process. *Id.* ¶ 14.

On May 1, 2020, more than a week after his release from SHU, the Regional Office received three separate grievances from Mr. Spencer alleging staff misconduct.[5] Boldt Decl., Ex. B, ECF No. 40 at 3–4. Each of these requests was rejected, and the SENTRY records include codes reflecting the reasons why. *Id.* ¶¶ 15–17. These codes ("INS" and "IRQ") indicate that the appeals received on May 1st were rejected because Mr. Spencer did not first file an Administrative Remedy Request for the warden's review and did not attach a copy of such a request or a response from the warden. *Id.* Later, on October 5, 2020 and November 2, 2020, Mr. Spencer filed additional Regional Office Appeals alleging staff misconduct that were rejected for the same reasons. *Id.* ¶¶ 18–19. There is no indication in the SENTRY database that, after April 15, 2020, Mr. Spencer ever filed an Administrative Remedy Request at the institutional level regarding his allegations of staff misconduct. *Id.* ¶ 20.

---

[5]    None of Mr. Spencer's grievances are in the record. The BOP returns paper copies of the administrative remedy documentation to the inmate at each phase of the administrative review process. Boldt Decl. ¶ 12. Mr. Spencer has not submitted any of this documentation, nor has he submitted other evidence indicating that he filed any other administrative remedy request than those referenced in the Defendants' motion and supporting papers.

On this record, the Court concludes that Mr. Spencer has failed to properly exhaust his administrative remedies. The law governing exhaustion requires a prisoner to seek review of his or her complaints from each level of the prison system's grievance process. Because there is no evidence that Mr. Spencer did that here, the issues raised in his Complaint have not been properly exhausted, and the PLRA prohibits him from filing a lawsuit about those issues "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, Mr. Spencer's failure to exhaust available remedies requires this case to be dismissed.[6]

In his response to the Defendants' motion, Mr. Spencer does not argue that he properly complied with the administrative-remedy process, nor does he suggest that there were no available administrative remedies through which he could raise his claim that placement in the SHU violated his right to due process. Instead, Mr. Spencer argues that dismissal for lack of exhaustion is not appropriate because Congress gave the federal courts original jurisdiction over cases arising under the Constitution in 28 U.S.C. § 1331. He contends that reading the exhaustion requirement of 42 U.S.C. § 1997e(a) to support dismissal of his Complaint contradicts Congress's conferral of jurisdiction over suits involving constitutional claims. Mr. Spencer suggests that to require exhaustion "would be

---

[6]    The Court also notes that the fact Mr. Spencer is now at FPC-Duluth does not necessarily mean that he has no available administrative remedies regarding the events that transpired at FCI-Sandstone. Several courts have held that transfer from one facility to another does not, by itself, excuse a prisoner from the exhaustion requirement. *See, e.g.*, *Blank v. Tabera*, 544 Fed. App'x 480, 481 (5th Cir. 2013); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011); *Flournoy v. Schomig*, 152 Fed. App'x 535, 537 (7th Cir. 2005); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002).

to neglect this Court of its own jurisdiction and give the FBOP authority over Plaintiff's constitutional right to due process." *See* Pl.'s Opp'n at 5, 7.

This argument, though creative, is not persuasive. Section 1331's conferral of original jurisdiction to federal courts over suits arising under the Constitution gives them the power to adjudicate disputes like the due process issue that Mr. Spencer has presented in his Complaint. Exhaustion of administrative remedies, as a non-jurisdictional defense, does not implicate the Court's power to hear cases involving constitutional claims. Rather, it is a condition that prisoners must satisfy before they can file lawsuits that challenge conditions in the prisons where they are confined. As the Supreme Court has noted, in enacting the PLRA, Congress sought, at least in part, to reduce the number of federal lawsuits filed by prisoners. *Porter*, 534 U.S. at 524–25. In essence, Congress wanted to make it harder for prisoners to litigate their grievances in federal courts, and this case is an example of how the PLRA achieves that purpose. In addition, the exhaustion requirement enables prisons to take corrective action to address a problem before engaging in litigation. *Id.*

But the Court's conclusion regarding exhaustion does not mean that Mr. Spencer's constitutional claims against the Defendants can never be adjudicated on their merits. Indeed, dismissal of a case for failure to exhaust administrative remedies should be without prejudice, and the Court recommends such a dismissal here. *Schuett*, 2016 WL 11198353, at *6 & n.8 (noting that dismissal without prejudice is appropriate even where a motion to dismiss for failure to exhaust is converted to a motion for summary judgment and collecting cases); *see also* Def.'s Mem. at 7 n.1 (asserting that dismissal for failure to exhaust should

be without prejudice and citing *Brown v. Cooper*, 787 Fed. App'x 366, 366–67 (8th Cir. 2019)).[7]

## Recommendation

Based on the foregoing, the Court recommends that the motion to dismiss (ECF No. 33) be **GRANTED** and this action be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

Date: June 1, 2021

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR

---

[7] If the District Court adopts this report and recommendation and this case is dismissed, Mr. Spencer should still have the option of bringing a new case after he has properly exhausted his administrative remedies. However, the Court notes that it has declined to reach the Defendants' remaining arguments seeking dismissal for failure to state a claim. This includes the Defendants' argument that the *Bivens* remedy of monetary damages for violations of constitutional rights by federal officials is only available in very few circumstances. Before Mr. Spencer considers refiling a new case post-exhaustion, he should seriously consider whether his chances of obtaining relief are great enough to incur another $350 filing fee.

72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.